Appellant, Mr. Bertram for Pro Se Appellant Bertram, Mr. Axon for O'Neill Currie, and Mr. Knapp for the Appellee. Good morning. I would like to reserve two minutes. This case has a swirl of complicated issues, and then there's one issue that is crystal clear, and that is the failure of the District Court to conduct a proper Rule 11 hearing. Specifically, the District Court failed to meet Rule 11b1g and 11b3, and Appellant, like the defendant in U.S. v. McCarthy, unknowingly and unintelligently pled guilty when Appellant lacked necessary mens rea. The District Court conducted what amounted to a two-question colloquy, which were yes or no questions, that failed to establish that Appellant understood the mens rea requirement of 7202. This Court noted the potential for harm from such a limited colloquy in U.S. v. Ford, where defendant pled guilty to a fundamental misunderstanding of what the statute required. Now, the government will say that there is a known legal duty, and the government used that phrase, but that's an obtuse phrase. Indeed, the Supreme Court needed to clarify what it meant in U.S. v. Ratzliff. To a layperson, it sounds like known legal duty means a financial obligation. Do I have a known legal duty to pay my mortgage? I think I do. Are there consequences if I don't? Yes, but those consequences aren't a felony conviction, and they're certainly not prison time. Seventh Circuit in U.S. v. Frye held that a defendant must understand the law in relation to the facts, and the plea must be an absolute defense. The Appellant didn't understand the mens rea requirement, and did not understand that relying on the advice of counsel was an absolute defense. The plea was not intelligent. There is no fundamental reason why an intelligent, adequately informed defendant would have pled guilty in this case, because no crime had been committed. Now, this District Court in U.S. Washington must determine also that there's a factual basis for the plea. There was no evidence that Appellant— Could we just talk for a minute about mens rea? Yes. So if I read the colloquy correctly, the District Court put on the record and the defendant acknowledged that the defendant knew about the obligation to submit the payroll taxes, and knowingly and voluntarily failed to do so. Why doesn't that describe the correct mens rea for willfulness? Well, because as the Supreme Court ruled in Ratzliff, based on what they had said and what a known legal duty is, a defendant has to know that the action they're taking is a criminal action. They have to understand that it violates a law, that it's a fraudulent attempt to deny the money to the federal government. That's not the case here. In this case, Appellant, I had an understanding that, based on the advice of counsel, that I would be able to pay it at a later date. That means I didn't understand that the actions I was taking were a criminal action by delaying the payment. This is an understanding you had from the attorney who represented you at the proceeding? Yes. I'm sorry, I didn't hear the question. This is an understanding you had from the attorney that represented you in the proceeding? I had a representation from previous counsel about what my obligations were. At no time did they say it was criminal. I'm asking you whether this is an understanding you had from Ms. Liu. Ms. Liu did not explain that there was the mens rea requirement. I did not object during sentencing because I didn't understand that there was a need. I didn't understand that. I thought, well, I didn't pay the taxes. Oh, well, that's the problem. But I did not understand the willfulness requirement that, in fact, that the Supreme Court put out in McCarthy, where it says very clearly the defendant has to understand that it's a criminal act. He can't, just because of sloppiness or misunderstanding, that's not enough to rise to a criminal act. I thought, reading your brief, you had blamed ineffective assistance of counsel not on Ms. Liu but on the prior counsel. I would argue that the ineffectiveness that came from Ms. Liu was based on what happened from Kono-Namurado. Previous counsel, well, not previous. I thought you had specifically said there was no ineffective assistance of counsel from Ms. Liu. Well, she relied on the advice. Did you not say that in your brief? I said that I did not see her actions as being ineffective. I think what I meant to indicate is that from Rubin and Gee, the Fourth Circuit cases, and Stoy, the Seventh Circuit cases, that an attorney's efforts can be ineffective, even though they weren't trying to be effective. I don't want to call her a bad person. I don't want to attack her work. But she simply was relying on what had been done by the other attorney who was still active at that time. Now, if that means her assistance was ineffective, then it was. That's not my understanding. You have not raised any claim that she was ineffective in this case. I've not, because I didn't understand that. Okay, so we can't raise it now here at oral argument. So your only argument, as I understand it, on ineffectiveness is that Kono-Namurado was ineffective. Well, and by the engagement letters that I signed, he was the one who was supposed to be doing that work, doing all the investigative work, representing me in front of any counsel. Right, but let's just focus your ineffective assistance counsel on that person. Okay. And so because I didn't understand, although when I met with him initially, he said there was a tribal case. He did not explain why. All further actions flowed from that. There was no discussion with either Jesse Liu or Tom Pirelli at the other firm about what their requirements were. They did not recommend I plead guilty. They were concerned about Namurado, and they actually recommended it. They said, we can get you additional counsel if you would like, because they were prevented from going to trial. They weren't supposed to represent me in court at all per the terms of the agreement. Namurado's ineffective assistance counsel, though, was far more than that. There were exculpatory witnesses who could have attested to the fact that I was following the advice of counsel and not paying the taxes. Was Namurado still involved at the time of the plea bargain? Yes. He engaged in a call with Jesse Liu during the sentencing period even. Did he go over the plea agreement with you? No. Did you ask him questions about the plea agreement? There was a plea offer. Did you ask him questions about this plea agreement? I asked him questions about the initial plea agreement that I do not know if it varied from this one very much. You didn't ask him questions about the plea agreement that you signed? I did not ask him questions about the plea agreement that I signed. The primary basis for the ineffective assistance charge is the failure to interview the three witnesses. Correct. But the sentencing memorandum seems to go into some detail about what they have said or would have said as exculpatory evidence. That's because I personally went and secured the declaration from one of the witnesses. From Carolyn Serrallo, there was no declaration. All I had was an e-mail that hinted at what she had said. And there was nothing from Frederick Robinson, the IRS agent who had done the audit, who said, you're fine, just wait until you're assessed and then you can pay. The Conan O'Mara who did interview one witness, that's good, but that's not adequate in this case. I have two minutes that I'm saving for rebuttal. Do you have any more questions? Not right now. Thank you. Okay. Thank you. May it please the Court. Counsel, Tony Axsom, appearing as amicus on behalf of Mr. Bertram. And a defendant's waiver of the right to collaterally attack a conviction or sentence under 28 U.S.C. section 2255 should not generally be enforced. Counsel, may I suggest that you either raise the podium or raise the mic? Yes. We're tall. Thank you. You said should not generally be enforced. So when should they and when should they not be enforced? As a general matter, they should not be enforced. The writ of habeas corpus – I'm responding to your word general here, so I'm trying to figure out, do you mean just across the board they should be enforced or that there's some situations where they should be? I'm just trying to clarify what you mean by as a general matter. I suppose that there is – we accept that there's a presumption that rights can be waived, constitutional rights can be waived. Our position is that the right to file a petition for habeas corpus should be inviolable. It should be a right that cannot be waived. Why? Right to trial is inviolable in the same way. I would disagree. The right to habeas corpus – first of all, trial rights are contained in the Constitution. The writ of habeas corpus doesn't actually appear. It appears by implication in the suspension clause. And that clause says the privilege of the writ of habeas corpus shall not be suspended unless in cases of rebellion or invasion the public safety may require it. So the writ of habeas corpus is a fail state. It's the backstop. It is the thing that ensures that someone is not incarcerated. Are you not suggesting that a waiver negotiated by the U.S. Attorney constitutes a suspension of the writ of habeas corpus? It is executive action seeking to suspend the writ of habeas corpus, yes, in each individual case. If the court is asking generally whether the government should have authority to insist on these waivers, our position is that they shouldn't. The court also should not implicate itself by enforcing them. How often have you – do you see these waivers, collateral review waivers? They are now included in all plea agreements. All plea agreements in this district? Currently. I would venture to say throughout the country they have become popular. Do you generally have any ability to negotiate over those terms? No. The government characterizes these both sentencing appeal waivers and 2255 waivers as bargaining chips. I can't state strongly enough that they are not bargaining chips at all. They are preconditions. You have to agree to the plea waiver. You have to agree to the 2255 waiver to have any negotiation in the plea process. It is simply a case of the government having a tremendous amount of leverage and the defendant having no leverage. It is a take it or leave it situation. Of course, you have the basic leverage of going to trial. You always have that. We always have leverage of going to trial. That has always been your basic leverage. That comes with a lot of extra risk, doesn't it? I'm sorry? It comes with a lot of extra risk. Not every defendant wants to go to trial. I'm sure that's true. No. If we're talking about negotiations, if we're talking about what benefit you get for giving up certain rights, there is no benefit that the defendant is getting. The government has added sentencing appeal waivers and collateral attack waivers with no corresponding benefit over the years. And if they chose to add something else tomorrow, defendants would accept it because they have no choice, because they're in the weak position. These are unilateral decisions by the government. And as I said before, these are preconditions. These are not conditions that can be negotiated out. If we think that these waivers are generally enforceable, is there any feature of this case that makes this waiver particularly troublesome? To me, the two important aspects of this one are, one is that all of the relevant facts seem to have been known by the defendant at the time of the plea, and a second is that there was no intervening change in law, which might create a special circumstance. So what is it about this case that makes this one more problematic, or are you just resting on your argument that we should never enforce? I don't think that this case is particularly compelling or unusual, and it's unnecessary for the court to actually reach. If the court examines the substance and nature of the claims and decides more to rule against Mr. Bertram, I would think that it's unnecessary for the court to actually reach the waiver issues in this case. I agree entirely. I'm sorry, you didn't answer that. I'm good. I was going to ask, what about the plea colloquy as it addressed the 2255 waiver here? Was that sufficient? The plea colloquy was not sufficient. The district judge essentially told the defendant that you will be giving up your 2255 rights. I would say that that means almost nothing to a defendant. It would be the equivalent of saying you're giving up your trial rights, and the defendant may know more about giving up your trial rights, but a colloquy in order for the court to be assured that the defendant is entering the plea knowingly and intelligently aware of the risks as this court has required would require an explanation of 2255. There is absolutely no explanation here. So in this case in particular, the government can't establish that Mr. Bertram knowingly and intelligently gave up his 2255 rights. And in general, I think it's difficult for courts to articulate what exactly a defendant is giving up. And it's partially because of something that Judge Katz has referred to. There are facts that are often unknown or unknowable. The law changes, and in that sense, the law is sometimes unknown and unknowable. And habeas corpus is designed to account for that. It is designed as the fail-safe to ensure that someone is not incarcerated unjustly when there are facts or law that may have changed, may come to light, may be different from the time when the defendant was found guilty. Well, newly discovered evidence is an exception, even in this case. In this case, newly discovered evidence is an exception, and we appreciate that. But the question of whether they should generally be enforced, if the court – newly discovered evidence would still need to establish some innocence on the part of the defendant. And once you reach that point, it's clear that there is some miscarriage of justice. Habeas corpus is designed to correct miscarriages of justice. So if the exception is going to be that you're waiving your habeas corpus rights unless there is a miscarriage of justice, it's not really a waiver. And it only becomes more confusing for the defendant. Again, the district court here didn't explain to the defendant what a miscarriage – there's no discussion whatsoever. So if we're only going to tie it to the facts of this case, the defendant did not knowingly and intelligently waive his right to file a writ of habeas corpus. The defendant had the same collateral attack language, and the defendant had two attorneys in the pre-plea stage. The first attorney failed to communicate a more favorable plea offer to the defendant. Didn't communicate it at all. And then withdrew his counsel, and a new counsel came in. This new plea comes in with this collateral attack waiver. Would they be able to later bring an ineffective assistance of counsel claim based on the original attorney not having even communicated a more favorable plea offer? Because it says that it's tied to ineffective assistance of counsel in entering into the agreement. It's a disagreement. I don't see anything that would prevent the defendant from raising the claim, whether the claim could succeed based on what the second attorney told him and what the court went over in the colloquy. It only preserves ineffective assistance of counsel in entering into, quote, this agreement. That's what I'm trying to figure out, if there was ineffective assistance of counsel with respect to a predicate agreement. If it would have been a better deal, never had a chance of that. So waited until the eve of the trial, and then they did this settlement. It was less favorable by that point. Have you ever seen that situation? You say this language is pretty boilerplate nowadays. No. I'm sorry. I'm just not equipped to answer. Okay. I didn't know if it would ever come up. I see that I've exceeded my time unless the court has further questions. You're understanding that this – sorry, just one last question. This type of language would bar a claim, say like a Johnson claim, because it preserves newly discovered evidence claims, but it doesn't preserve changes in the law. As written, yes, it would bar Johnson claims. Now, the government makes a point in its brief suggesting that it would not because that would represent a miscarriage of justice. But then we're right back in the circle. If habeas corpus is designed to prevent miscarriages of justice and there are the exceptions that the government wants, I guess, this court to carve out, what are the exceptions? The exceptions are unless you have a meritorious habeas corpus claim. Well, the court will always have to review the claims to determine whether they're meritorious. So I guess I'm – we don't think habeas corpus claims should be enforced, but to enforce them by the government's terms are nonsensical. It's not actually enforcement. Thank you. Thank you very much. Good morning. May it please the Court. Greg Knapp for the United States. The issues for which this court granted a certificate of appealability are the cognizability of Mr. Bertram's actual innocence claim, his selective prosecution claim, and ineffective assistance of counsel. As a result, this court does not need to reach the issue of whether or not Mr. Bertram's claim was knowing and voluntary in the sense that he understood what it meant to act willfully. However, if this court were to take a very liberal view of the certificate of appealability, a very liberal view of what claims Mr. Bertram preserved in his district court filings, it should still not reach the question of whether or not Mr. Bertram's claim was knowing and voluntary – procedurally defaulted. In this 2255 action, because Mr. Bertram did not raise on any direct appeal his challenge to the knowing and intelligent nature of the guilty plea, that would be procedurally defaulted under Boozley v. United States, under this court's decision in Baxter. He didn't raise on direct appeal because he's under the plea, right? Correct. And now he's attacking the plea, so if there's sufficient ground to set aside the plea, why would we hold him to the failure to appeal any more than we would hold him to the plea? Because a failure to appeal in itself is not cause to excuse a procedural default under 2255. That falls directly from this court's decision in Baxter. Generally, the Supreme Court recognizes that the perceived futility of raising the claim on direct appeal is now the grounds for not preserving it. It's not perceived futility. It's that the plea agreement barred the appeal. Well, it seems a bit rich for the government to have an appeal waiver and say you can't appeal, and then later go you're barred from bringing these claims because you didn't appeal. But a plea waiver would not have applied to Mr. Bertram's claim that his plea was not knowing and intelligent. You can always challenge that. That's well established. And so there would be no basis in a hypothetical appeal for the government to try to invoke the appeal waiver that challenged the knowing and intelligent nature of the plea. Because if the plea hypothetically were not knowing and intelligent, well, of course that's challengeable on appeal. But because Mr. Bertram did not do that, it would be procedurally defaulted in this 2255 action, and so in order to proceed. I'm sorry. I may just be ignorant here, but have we had cases that have said knowing and intelligence? I mean, people are always going to raise that to get around an appeal waiver otherwise. Well, the simple claim, for example, this court's case in Guillen. It's like a plea has to be knowing and intelligent. And so if it's not, that's an exception to the enforcement of an appeal waiver. I thought you normally ran those through ineffective assistance of counsel or the insufficiency of the plea colloquy. They had effective counsel, the gold standard plea colloquy, where they said you had your knowledge. This is knowing. You know what you're doing. You're willing to enter into this. They could still then appeal and say it wasn't willing and knowing. I'm sure they often are linked to ineffective assistance of counsel, but I'm just following what this court said in Guillen, that we would not enforce if it's not knowing and intelligence. And so in order to proceed on that claim in this 2255 action pursuant to Boozley, Mr. Brooks would have to pass through the actual innocence gateway, and he cannot meet that standard because there's no new evidence that would make it more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. I'm sorry. Your selected prosecution claim, you argue, is barred by the collateral review waiver. I'm wondering if that is just also barred directly by the sentencing agreement itself, the plea itself, even if it didn't have that collateral waiver provision, would it not still be barred by that, since in this situation where all the information on which he predicates that claim was known at the time? Or is that something that just can't be waived by plea? You don't need the collateral attack waiver. There are other grounds. First, just as a general matter, Mr. Bertram's 2255 petition, in our view, represents an impermissible attempt to collaterally attack a knowing and valid guilty plea. And so that's a basic reason. Also, with respect to the selected prosecution specifically, there's a requirement in the criminal rules that at least with respect to facts that were known, as Your Honor refers to it, must be raised pre-trial pursuant to Rule 12 of the criminal rules. And again, that claim also would be procedurally defaulted to selected prosecution. And so although the collateral attack waiver, in our view, bars Mr. Bertram's first two claims, actual innocence, selected prosecution, the court would not have to rely on that to dispense with those claims. And, in fact, perhaps the cleaner way with respect to actual innocence is to merely recognize it's not cognizable under 28 U.S.C. 2255. Counsel, this is a little bit off the point, but the public defender points out that he's concerned about the disparity in bargaining strength between the government and defense counsel. We hear very much about the decline of trials because over here the district judge is saying that defense counsel no longer has the incentive to go to trial. The downside risk is too great. Is that because, if it's true, is that because of the sentencing guidelines more than anything else? I think the sentencing guidelines would play a large portion of that. It's a combination of the charges that are available as well as the guideline range that would be permissible in relation to those charges. That's my assumption. I mean, I can't speak to what goes into the calculus of a particular defendant. No, I'm asking you in gross, why do we see such a paucity of criminal trials? I'm afraid I don't know. I wasn't, frankly, even aware that there's been a decline in terms of the – I won't deny that there are incentives, strong incentives for plea deals, but that applies to the government as well. I mean, if a secure plea agreement can be arranged, it benefits all parties involved. Of course. The government doesn't have remotely the risk exposure that the defendant does in these deals. I'm sorry? The government doesn't have remotely the risk exposure that the charged defendant does in these plea negotiations, right? The government might have to go to trial with attorneys who are all on effectively retainer anyhow. It doesn't cost them anymore to go to trial rather than plea. And, you know, nobody bears losing their liberty at the end of the day. But defendants are facing extraordinary risk. And if they're just a little bit – you're not quite poor enough to get an appointed attorney, then they can be facing bankrupting themselves and their families if they push this thing to trial. And the sentencing guidelines has – will knock your guidelines range down for pleading. You're not going to get that cooperation. You're going to have a higher guideline just as a result of that, if nothing else, from going to trial. So it doesn't seem to me like it's really, as you said, risk on both sides. Well, no, I won't deny that there's a greater personal stake on behalf of the defendant. But if anything, I think that would just – There's a personal stake. There's a greater stake, a lot more at risk, a lot more to lose than there is on the government side. And the government controls the charges. That's true. That's true. I don't think that in any way undermines the enforceability of collateral attack waivers or really directly relates to any other issue that's raised in this appeal. I mean, that's – as this Court recognized again, one of the main benefits of plea guarding from the defendant's perspective, who has a great personal stake in the outcome, is to narrow the range of possibilities, to achieve a predicted sentencing outcome that is not the worst-case scenario and which gives the defendant value. And there's no reason why that reasoning shouldn't transfer equally to a collateral attack waiver. And all the other federal circuits that have upheld such waivers have recognized that analogy. Defendants have a right to public trials and public proceedings in criminal cases, right? There are no secret criminal trials in this country. Could that be waived? Is that one of those constitutional rights you can just waive? Left secret, please. I don't believe so because that would implicate First Amendment protections as well that are, of course, important to the defendant but not just the defendant. I have not researched that particular question, but I would think that that would be very problematic to waive the right to a public trial. So there's public interest in the conduct of criminal trials. Are there public interests in having opportunities for review of governmental prosecutions? I mean, there is a constitutional right to appeal that we say can be waived. But it seems to me the reason we have that constitutional right is both for the defendant but is it also because we try to keep a check on government in criminal cases? That very well may be. And perhaps those same observations, those same concerns, have motivated other courts to carve out appropriate exceptions in appropriate cases to waivers of trial and appeal rights and waiver of collateral deference. What do you think are the appropriate things that can be carved out? Apart from what's in the text, what are the carve-outs that the United States government agrees are appropriate? Well, if this court needs to decide that issue, I assume it would follow its own lead in Guyenne, which carved out similar exceptions. I'm asking you what the United States government's position is on what the acceptable carve-outs are to plea waivers that are not already contained in the waiver itself. I agree with Guyenne in the sense that it acknowledges that any waiver must be knowing and intelligent. If there's ineffective assistance of counsel in connection with agreeing to that waiver, that is a permissible carve-out. What about my hypothetical of the ineffective assistance of counsel that predates this agreement? It didn't communicate to the defendant an even better plea offer early on to save everybody's resources. And so now it's the eve of trial. This is the one that they get. Of course, it's now a less favorable plea agreement. I guess the question there would be, does that count as a change of the outcome? Because either way, the defendant has pleaded guilty. I'm asking you whether that would be allowed or not under the collateral waiver, either as drafted here or in the United States position as to the exceptions that need to be carved out. If the alleged ineffective assistance did not relate to the six-minute counsel for the plea agreement that's actually entered, I don't think that would be accepted. I have not researched that particular issue. Perhaps it would depend on when the six-minute right to counsel attached as well. So I do not have a definitive answer to that question. So I think it's common, not uncommon, actually, for an indictment not to even be made until it's actually made in conjunction with the entry of the plea agreement. And so if you don't have a right to counsel it attaches until the indictment, then the whole plea agreement could be negotiated before the right to counsel even attaches. It could. So that would be a nice way for the government to get out of these challenges, right? We wouldn't even have to have ineffective assistance of counsel if we just negotiate everything before we drop the indictment. That's the government's position. That's okay, too, and nobody can ever look at that again either. No, I'm not so sure. You wouldn't still have a case of ineffective assistance of counsel. Well, before the six-minute right attaches, I don't know. The most recent definitive word on that is from the Sixth Circuit, which recently ruled en banc that there is no right of counsel that attaches pre-indicted negotiations. The Turner case is what it's called. There is a pending cert petition on that question. And the government's position on that cert petition? We have not. Is the Sixth Circuit wrong? The government has not filed an opposition yet, and so I really should defer. I bet the government was the one that made that argument to the Sixth Circuit en banc. Perhaps, yeah. Perhaps? Yeah, I didn't review the government's filings, but, yes, that's a reasonable assumption. What about when a federal law is subsequently declared unconstitutional? There's an exception here for newly discovered evidence. Is the government's position that, like the Johnson case or the Class case in the Supreme Court, would be the argument there? Yeah. That that is an inherent exception even though you don't write it into your waivers? Or not. That's just part. It's a right they have, and they've waived it. It's a constitutional right. They've waived it. They've waived it. That's just how the deal was made. If an intervening change in the law, a Supreme Court decision, establishes that the conduct, the facts to which the defendant pleaded guilty, is no longer a crime, it would seem to me that would be a permissible exception in this case. Why is it not just something they can waive like everything else? That. But you don't know the government's position on whether that has to be read into all plea. Because you don't write it. You haven't written it in. So my assumption is the government's position is they don't have to have that exception. I don't disagree with other circuits that have recognized that exception under those circumstances. When, in fact, a change in the law. You don't disagree or the United States government doesn't disagree? In terms of the position of the United States, all I can say is that that particular question is not raised by this case because there's no change in the law. There's no fundamental affair. Here's just a case of trying to take back a knowing, intelligent, guilty plea. Is there any other questions that the Court has for me? That's true. I guess just to clarify. You don't have to. You don't have to. I just want to state that we're not arguing that the counsel claim is covered by any waiver. And so in our view, the simplest way to address that claim is to simply recognize that the alleged deficient performance by Mr. Navarro predated the Sixth Amendment counsel that attached with Ms. Liu. And so that's why it basically fails. So I'll just state that briefly. Thank you for your time. Thank you very much. We'll give Mr. Bertram two minutes. So first is that, as I noted in the reply brief, there is case after case after case where Rule 11 challenges are always looked at at the Court of Appeals, even if it was not brought at the trial level, although it is brought in the 2255, because the absolute importance of when someone pleads guilty, it has to be made sure that that is a knowing and understood. The government seems to want to push off the Rule 11 obligations to my counsel, but that's not adequate. There's case after case after case where it says Rule 11 must be done by the judge. The U.S. v. Cantor says that it must explain what basic acts must be proved. That didn't happen in this case. In Ford, it says you have to have an understanding of what the crime is. The defendant has to understand what the actual crime is. At your guilty plea hearing, the AUSA went through a pretty specific factual discussion of what they alleged the facts of the crime were and was quite specific about knowingly failing to pay these taxes. And at the end, the district court judge asked you to listen to what was said and said, do you agree with all that? And you said yes. Now, were you not listening? I was listening, but— Did you hear them say willingly? Willing has a number of different definitions, and the legal definition is very different than the lay definition. Did you ask your attorney what that meant? I did not. What did you think they meant by willing? You did say knowing. They said knowing and willing. So what did you think that extra word added to the dialogue? My understanding is that I made the decision. After getting advice of counsel, I didn't pay the tax. I thought that satisfied it, which is the exact same case that would happen in McCarthy. The defendant there pled guilty because he's like, well, I didn't pay the tax. I thought I didn't know that was a crime, but I didn't pay it, so I must be guilty even though I didn't know it was a crime. Willingness sets that extra level because the defendant has to understand that his action is a crime. I did want to talk about— Your time's up now. Okay. I was going to say plea agreements around the country almost all also exclude prosecutorial misconduct. D.C. is one of the very few where they're not excluding— You haven't raised any claim like that in this case. Okay. All right. Thank you very much. Thank you. Mr. Axsom, we asked the federal public defender to address specific legal issues in briefing and oral argument, and we're very grateful for the public defender's assistance to the court in this case. The case is submitted.
judges: Millett, Katsas, Silberman